IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN SINGH, | CASE NO. CV F 10-1355 LJO GSA |
| Plaintiff, | **ORDER ON LITTON LOAN SERVICING'S MOTION TO DISMISS REMANDED CLAIMS** |
| vs. | (Doc. 30.) |
| LITTON LOAN SERVICING LP, et al., | |
| Defendants. | |

## INTRODUCTION

Defendant Litton Loan Servicing LP ("Litton") seeks to dismiss plaintiff John Singh's ("Mr. Singh's") claims remanded from multidistrict litigation regarding his defaulted home loan. This Court considered Litton's F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the May 25, 2011 hearing, pursuant to Local Rule 230(g). For the reasons discussed below, this Court DISMISSES Mr. Singh's remanded claims.

## BACKGROUND[1]

### Summary

Generally, the complaint alleges that Mr. Singh was placed in an improper loan which he could not afford for his Fresno residence ("property"). This action was included in a multidistrict proceeding

---

[1] The factual recitation is derived generally from Mr. Singh's verified complaint ("complaint") and matters of which this Court may take judicial notice.

1

in the Arizona district court, which remanded to this Court certain claims. Litton attacks the remanded claims as improperly pled and legally barred.

### Mr. Singh's Loan

On June 14, 2006, Mr. Singh obtained a $419,097.41 property loan secured by a deed of trust on the property. Mr. Singh defaulted on the loan, and foreclosure proceedings have been initiated.

### Mr. Singh's Remanded Claims

The complaint alleges that the "loan was neither proper nor suitable for Plaintiff's condition and station in life" and "exceeded the reasonable expected value of the property." In addition to Litton, the complaint names MERSCORP, Inc. and Mortgage Electronic Registration Systems, Inc. ("MERS") as defendants and fails to distinguish alleged wrongdoing among the three named defendants.[2] The complaint includes six remanded claims ("remanded claims") which allege federal and California statutory and common law claims and which will be addressed in greater detail below. The complaint seeks to enjoin or rescind foreclosure and eviction proceedings, to prevent defendants to transfer the property, and to declare the foreclosure trustee sale void. The complaints seeks to recover damages and for Mr. Singh's emotional distress.

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

Litton attacks the remanded claims as "cursory and unsupported" for failure to "allege a single act of wrongdoing on the part of Litton" and "what, if any, injury plaintiff has suffered on account of Litton's alleged conduct." Litton points to the absence of "a single substantive allegation regarding Litton's alleged involvement in the alleged wrongdoing" which is chiefly directed at loan origination in which Litton did not participate.

"A trial court may dismiss a claim sua sponte under Fed.R.Civ.P. 12(b)(6). . . . Such dismissal may be made without notice where the claimant cannot possibly win relief." *Omar v. Sea-Land Service, Inc.*, 813 F.2d 986, 991 (9th Cir. 1987); *see Wong v. Bell*, 642 F.2d 359, 361-362 (9th Cir. 1981). Sua sponte dismissal may be made before process is served on defendants. *Neitzke v. Williams*, 490 U.S.

---

[2] Given the complaint's failure to distinguish among Litton, MERSCORP, Inc. and MERS, this Court will refer to them collectively as "defendants."

2

319, 324 (1989) (dismissals under 28 U.S.C. § 1915(d) are often made sua sponte); *Franklin v. Murphy*, 745 F.2d 1221, 1226 (9th Cir. 1984) (court may dismiss frivolous in forma pauperis action sua sponte prior to service of process on defendants).

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In addressing dismissal, a court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and a court must not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983). A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to

plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009), the U.S. Supreme Court recently explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

Moreover, a limitations defense may be raised by a F.R.Civ.P. 12(b)(6) motion to dismiss. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see Avco Corp. v. Precision Air Parts,*

4

*Inc.*, 676 F.2d 494, 495 (11th Cir. 1982), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 450 (1982). A F.R.Civ.P. 12(b)(6) motion to dismiss may raise the limitations defense when the statute's running is apparent on the complaint's face. *Jablon*, 614 F.2d at 682. If the limitations defense does not appear on the complaint's face and the trial court accepts matters outside the pleadings' scope, the defense may be raised by a motion to dismiss accompanied by affidavits. *Jablon*, 614 F.2d at 682; *Rauch v. Day and Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978).

For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). Nonetheless, a court may consider exhibits submitted with the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Van Winkle*, 290 F.Supp.2d at 1162, n. 2. In addition, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003). Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[3] A "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)). Moreover, "judicial notice may be taken of a fact to show that a complaint does not state a cause of action." *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956); *see Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997). A court properly may take judicial notice of matters of public record outside the pleadings and consider them for purposes of the motion to dismiss. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649

---

[3] "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

(9th Cir. 1988).

As discussed below, the remanded claims are subject to dismissal in that they are not supported by a cognizable legal theory or sufficient facts alleged under a cognizable legal theory. In addition, the remanded claims are susceptible to defenses.

### **Global Attack – Failure To Satisfy F.R.Civ.P. 8**

Litton globally attacks the remanded claims' failure to attribute actionable wrongdoing to it in that the complaint "lumps the defendants together without providing any factual allegations to distinguish their alleged conduct." The remanded claims are subject to global attack for failure to satisfy F.R.Civ.P. 8, which requires a plaintiff to "plead a short and plain statement of the elements of his or her claim, identifying the transaction or occurrence giving rise to the claim and the elements of the prima facie case." *Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000).

F.R.Civ.P. 8(d)(1) requires each allegation to be "simple, concise, and direct." This requirement "applies to good claims as well as bad, and is the basis for dismissal independent of Rule 12(b)(6)." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). "Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *McHenry*, 84 F.3d at 1180. "Prolix, confusing complaints . . . impose unfair burdens on litigants and judges." *McHenry*, 84 F.3d at 1179.

Moreover, a pleading may not simply allege a wrong has been committed and demand relief. The underlying requirement is that a pleading give "fair notice" of the claim being asserted and the "grounds upon which it rests." *Yamaguchi v. United States Department of Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997). Despite the flexible pleading policy of the Federal Rules of Civil Procedure, a complaint must give fair notice and state the elements of the claim plainly and succinctly. *Jones v. Community Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984). A plaintiff must allege with at least some degree of particularity overt facts which defendant engaged in to support plaintiff's claim. *Jones*, 733 F.2d at 649. A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, __ U.S. __, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). The U.S. Supreme Court has explained:

> While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant "set out in detail the facts upon which he bases his claim," *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (emphasis added), Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

*Twombly*, 550 U.S. at 556, n. 3, 127 S.Ct. 1955.

Litton notes that the complaint "is devoid of any factual allegations of what Litton is alleged to have done with respect to any of the alleged wrongdoing" and lacks "factual detail regarding Litton's alleged role in the alleged wrongdoing" given its "lumping" of defendants.

Litton makes valid points. The complaint and its remanded claims fail to satisfy F.R.Civ.P. 8 as to Litton. The complaint fails to distinguish alleged wrongdoing of Litton and other defendants. The complaint and its remanded claims focus on loan origination, in which Litton, as loan servicer, had no part. The complaint and its remanded claims lack facts of Litton's purported wrongdoing to provide fair notice as to what Litton is to defend.

## **Standing**

Litton argues that Mr. Singh lacks standing to pursue claims against Litton in that the complaint fails to allege injury "traceable to any alleged conduct on the part of Litton."

In *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S.Ct. 2130 (1992), the U.S. Supreme Court explained that "standing contains three elements":

1. The "plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized" and "(b) 'actual or imminent, not 'conjectural' or 'hypothetical'";

2. "[T]here must be a causal connection between the injury and the conduct complained of – the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court"; and

3. "[I]t must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"

"Since they [three elements] are not mere pleading requirements but rather an indispensable part of the

plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof . . ." *Lujan*, 504 U.S. 555, 561, 112 S.Ct. 2130 (1992).

Litton is correct that the complaint fails to substantiate Mr. Singh's standing to pursue the remanded claims against Litton. The complaint lacks facts of Litton's specific alleged misconduct. The complaint targets loan origination activity in which Litton was not involved. In the absence of facts to support Mr. Singh's necessary standing, the remanded claims fail as to Litton.

**California Statutory Unfair Lending Practices**

The complaint's first claim is entitled "Violations of Unfair Lending Practices – AB 498-AB901." The claims alleges that defendants "knew or should have known that the loan made to Plaintiffs herein was based on limited verification as to the Plaintiffs [sic] to repay the loan" and that defendants' actions "constitute unfair lending practices and violated protections of the Plaintiff guaranteed under AB 489, AB 901."

Litton notes that the claim appears to reference California Financial Code sections 4970-4979 and fails to allege facts that Mr. Singh's loan is a "covered loan" under subsection (b) of California Financial Code section 4970 ("section 4970"). Section 4970(b) provides:

> "Covered loan" means a consumer loan in which the original principal balance of the loan does not exceed the most current conforming loan limit for a single-family first mortgage loan established by the Federal National Mortgage Association in the case of a mortgage or deed of trust, and where one of the following conditions are met:
>
> (1) For a mortgage or deed of trust, the annual percentage rate at consummation of the transaction will exceed by more than eight percentage points the yield on Treasury securities having comparable periods of maturity on the 15th day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor.
>
> (2) The total points and fees payable by the consumer at or before closing for a mortgage or deed of trust will exceed 6 percent of the total loan amount.

The complaint fails to allege facts that Mr. Singh's loan meets section 4970(b) conditions. *See Nool v. HomeQ Servicing*, 653 F.Supp.2d 1047, 1054 (E.D. Cal. 2009) (dismissing a section 4970 claim for failure to allege "covered loan" conditions). In absence of necessary facts to establish a covered loan, the first claim fails. *See Fortaleza v. PNC Financial Services Group, Inc.*, 642 F.Supp.2d 1012, 1020 (N.D. Cal. 2009) (dismissing a claim under California Financial Code, §§ 4973, et seq., in that plaintiff "failed to identify either the specific statutory provision pursuant to which plaintiff brings suit, or the

8

specific conduct undertaken by either [defendant] in alleged violation of an applicable statutory provision").

Litton further attacks claims under California Financial Code sections 4970-4979 as untimely in that California Code of Civil Procedure section 340 provides a one-year limitations period for statutes such as California Financial Code sections 4970-4979. *See DeLeon v. Wells Fargo Bank, N.A.*, 729 F.Supp.2d 1119, 1128-1129 (N.D. Cal. 2010). Litton is correct that Mr. Singh's claims arise out of his loan origination and accrued at the loan's June 14, 2006 closing to render the May 2010 complaint filing untimely for claims under California Financial Code section 4970-4979.

## Real Estate Settlement Procedures Act

The complaint's second claim alleges that defendants failed to respond to Mr. Singh's "Qualified Written Request Letter" ("QWR") to violate the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, et seq. The claim further alleges that "Defendants did not furnish Plaintiff the correct Notice of Servicing that the loan may be assigned, sold or transferred to any other person in violation of 12 U.S.C. 2605(a)." The RESPA claim further accuses "Defendants individually or collectively [of] receiv[ing] kickbacks, unearned fees, or a thing of value as part of the real estate settlement."

Under RESPA, a QWR is a "written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan." 12 U.S.C. § 2605(e)(1)(A). Among other things, a QWR must include a "statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B)(ii).

Litton points to the absence of allegations to support that Mr. Singh sent a legitimate QWR. Litton is correct. The complaint fails to plead or identify a viable or legitimate QWR.

Litton also attacks the complaint's failure to allege damages due to failure to respond to a QWR. "Whoever fails to comply with this section shall be liable to the borrower . . . [for] any actual damages to the borrower as a result of the failure . . ." 12 U.S.C. § 2605(f)(1)(A). "However, alleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiffs must, at a minimum, also allege that the breach resulted in actual damages." *Hutchinson v. Delaware Sav. Bank FSB*, 410 F.Supp.2d 374, 383 (D. N.J. 2006).

9

A purported RESPA claim fails to allege pecuniary loss from Litton's failure to respond to a QWR or otherwise.  Such omission is fatal to the claim's reliance on a RESPA violation or Litton's failure to respond to Mr. Singh.  A purported RESPA claim is doomed in the absence of allegations of Mr. Singh's identifiable damages attributable to a RESPA violation.

Litton further challenges the RESPA claim's allegation that Mr. Singh was not provided a "correct Notice of Servicing."  Litton produces its "Servicing Transfer Information," a notice which provides information required of a service transferee under 12 U.S.C. § 2605(c).  Such notice, subject to judicial notice, proves fatal to an allegation that Mr. Singh did not receive "correct Notice of Servicing."

Litton also attacks the RESPA claim's failure to allege that "Litton engaged in an agreement to refer business in relation to the settlement of plaintiff's real estate transaction."  12 U.S.C. § 2607(a) prohibits referral payments for real estate settlement services, and 12 U.S.C. § 2607(b) prohibits receipt of "any portion, split or percentage" of a settlement service fee, except for performed services.  Litton is correct that as a loan servicer, it is not subject to a RESPA claim in it was not involved in loan origination.

Lastly, Litton points to 12 U.S.C. § 2614's one-year limitations for violations of 12 U.S.C. § 2607.  The "primary ill" which RESPA seeks to remedy is "the potential for 'unnecessarily high settlement charges' caused by kickbacks, fee-splitting, and other practices that suppress price competition for settlement services.  This ill occurs, if at all, when the plaintiff pays for the service, typically at the closing." *Snow v. First American Title Ins. Co.*, 332 F.3d 356, 359-360 (5th Cir. 2003) (quoting 12 U.S.C. §2601(a)).  Mr. Singh closed his loan in June 2006, well more than a year prior to the complaint's May 2010 filing to bar RESPA claims.

### Fair Credit Reporting Act

The complaint's fourth claim alleges violations under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x.  The claim alleges that:

1. "Defendants willfully did not use any commercially reasonable means to determine if Plaintiff had the ability to repay the loan prior to extending credit to Plaintiffs";

2. "Defendants knew the plaintiff was disputing the Transactions here, as set forth in

    writing, yet the defendants continued to make negative marks on Plaintiff's credit
    Report"; and

3. "Defendants violated 15 U.S.C. 1681s-(a)(3) by failing to notify the consumer reporting
   agencies that the debt was disputed."

  Litton attacks the allegations as legally flawed. Litton notes the absence of authority to impose FCRA liability for failure to use commercially reasonable means to determine ability to repay a loan. Litton further challenges liability in that as a loan servicer, Litton "is not alleged to have participated in the underwriting and origination" of Mr. Singh's loan.

  As to further alleged FCRA violations, 15 U.S.C. § 1681s-2 "identifies two duties imposed upon such furnishers of [credit] information: the duty to provide accurate information [§ 1681s-2(a) ] and the duty to undertake an investigation upon receipt of notice of dispute from a consumer reporting agency [§ 1681s-2(b) ]." *Carney v. Experian Info. Solutions, Inc.*, 57 F.Supp.2d 496, 501 (W.D. Tenn.1999).

  Litton points to the absence of a supportable claim under the FCRA provisions on which the FCRA claim necessarily relies. 15 U.S.C. § 1681s-2(a)(3) provides:

> If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer.

Duties imposed on furnishers under 15 U.S.C. § 1681s-2(a) "are enforceable only by federal or state agencies," not through a private right of action. *Griley v. National City Mortg.*, 2011 WL 219574, at *4 (E.D. Cal. 2011) (citing *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1059 (9th Cir.2002) ("Congress limited the enforcement of the duties imposed by § 1681s-2(a) to governmental bodies")). A 15 U.S.C. § 1682s-2(a) claim "is barred because there is no private right of action for violations of that section of the statute." *Nelson v. Equifax Information Services, LLC*, 522 F.Supp.2d 1222, 1230 (C.D. Cal. 2007).

  Litton further challenges a purported claim under 15 U.S.C. § 1681s-2(b) in the absence of allegations that credit reporting agencies provided Litton notice of Mr. Singh's disputes to render such failure fatal. Courts have "uniformly" concluded that 15 U.S.C. § 1681s-2(b) "provides a private cause of action only if the furnisher received notice from a consumer reporting agency, as opposed to the

11

plaintiff alone, that the credit information was disputed." *Aklagi v. Nations Credit Fin. Services Corp.*, 196 F.Supp.2d 1186, 1193 (D. Kan. 2002) (citing, *inter alia, Hasvold v. First USA Bank*, N.A., 194 F.Supp .2d 1228, 1236 (D. Wyo.2002)). The "furnisher's Section 1681s-2(b) duty to investigate is triggered only after the consumer notifies the CRA,[4] and the CRA then notifies the furnisher of credit." *Nelson*, 522 F.Supp.2d at 1231 (C.D. Cal. 2007) (citing *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1060 (9th Cir.2002)).

Litton is correct that the complaint lacks facts to support a FCRA claim. The complaint fails to allege facts that Litton, as a loan servicer, furnished credit information or is subject to FCRA duties to provide accurate credit information or to investigate to impose FCRA liability on Litton. There are no meaningful allegations that a crediting reporting agency notified Litton of a dispute. Purported FCRA claims fail as to Litton.

## **Unjust Enrichment**

The complaint's (sixth) unjust enrichment claim alleges that:

1. "Due to the unfair and deceptive nature of the Plaintiff's loan transaction, the defendants were paid excessive interest and fees for loan amounts that were unjustified"; and

2. Defendants possess "money that belongs to the Plaintiff and has [sic] deprived Plaintiffs of its possession and enjoyment."

Litton faults the unjust enrichment claim as barred by Mr. Singh's loan documents.

"[A]s a matter of law, a quasi-contract action for unjust enrichment does not lie where, as here, express binding agreements exist and define the parties' rights." *California Medical Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc.,* 94 Cal.App.4th 151, 172, 114 Cal.Rptr.2d 109 (2001). "When parties have an actual contract covering a subject, a court cannot – not even under the guise of equity jurisprudence – substitute the court's own concepts of fairness regarding that subject in place of the parties' own contract." *Hedging Concepts, Inc. v. First Alliance Mortgage Co.,* 41 Cal.App.4th 1410, 1419-1420, 49 Cal.Rptr.2d 191 (1996).

In the complaint, Mr. Singh acknowledges that he entered into a note and deed of trust for his

---

[4] "CRA" stands for credit reporting agency.

property loan. Litton is correct that "those agreements dictate the rights of the parties" and that Mr. Singh "cannot attempt to vindicate such rights by way of an action for quasi-contract." Mr. Singh's note and deed of trust bar a purported unjust enrichment claim.

### **Emotional Distress**

The complaint's (seventh) emotional distress claim alleges that "as a result of Defendants' unlawful and illegal actions, Plaintiffs has [sic] suffered extreme personal, mental, emotional anguish."

This Court and Litton construe the claim to attempt to allege intentional infliction of emotional distress ("IIED"). Litton attacks the complaint's failure to allege facts to support an IIED claim.

The elements of an IIED claim are: (1) defendant's outrageous conduct; (2) defendant's intention to cause, or reckless disregard of the probability of causing, emotional distress; (3) plaintiff's suffering severe or extreme emotional distress; and (4) an actual and proximate causal link between the tortious (outrageous) conduct and the emotional distress. *Nally v. Grace Community Church of the Valley*, 47 Cal.3d 278, 300, 253 Cal.Rptr. 97, 110 (1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1644 (1989)*;Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 155, n. 7, 233 Cal.Rptr. 308 (1987). The "[c]onduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Davidson v. City of Westminister*, 32 Cal.3d 197, 209, 185 Cal.Rptr. 252 (1982) (quoting *Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579, 593, 156 Cal.Rptr.198 (1979)). Conduct is extreme and outrageous when it is of a nature which is especially calculated to cause, and does cause, mental distress. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal.App.3d 590, 617, 262 Cal.Rptr. 842, 857 (1989).

To support an intentional infliction of emotional distress claim, the conduct must be more than "intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware." *Christensen v. Superior Court*, 54 Cal.3d 868, 903, 2 Cal.Rptr.2d 79 (1991). The California Supreme Court has further explained:

> "The law limits claims of intentional infliction of emotional distress to egregious conduct toward plaintiff proximately caused by defendant." . . . The only exception to this rule is that recognized when the defendant is aware, but acts with reckless disregard, of the plaintiff and the probability that his or her conduct will cause severe emotional distress to that plaintiff. . . . Where reckless disregard of the plaintiff's interests is the theory of

recovery, the presence of the plaintiff at the time the outrageous conduct occurs is recognized as the element establishing a higher degree of culpability which, in turn, justifies recovery of greater damages by a broader group of plaintiffs than allowed on a negligent infliction of emotional distress theory. . . .

*Christensen*, 54 Cal.3d at 905-906, 2 Cal.Rptr.2d 79 (citations omitted.)

"In the context of debt collection, courts have recognized that the attempted collection of a debt by its very nature often causes the debtor to suffer emotional distress." *Ross v. Creel Printing & Publishing Co.,* 100 Cal.App.4th 736, 745, 122 Cal.Rptr.2d 787 (2002) (citing *Bundren v. Superior Court,* 145 Cal.App.3d 784, 789, 193 Cal.Rptr. 671 (1983)). "Frequently, the creditor intentionally seeks to create concern and worry in the mind of the debtor in order to induce payment." *Bundren,* 145 Cal.App.3d at 789, 193 Cal.Rptr. 671. Such conduct is only outrageous if it goes beyond "all reasonable bounds of decency." *Bundren,* 145 Cal.App.3d at 789, 193 Cal.Rptr. 671.

"The assertion of an economic interest in good faith is privileged, even if it causes emotional distress." *Ross,* 100 Cal.App.4th at 745, n. 4, 122 Cal.Rptr.2d 787 (citing *Fletcher v. Western National Life Ins. Co.,* 10 Cal.App.3d 376, 395, 89 Cal.Rptr. 78 (1970)); *Cantu v. Resolution Trust Corp.,* 4 Cal.App.4th 857, 888, 6 Cal.Rptr.2d 151 (1992). "In debtor/creditor cases, the privilege is qualified, in that it can be vitiated where the creditor uses outrageous and unreasonable means in seeking payment." *Ross,* 100 Cal.App.4th 736, 745, n. 4, 122 Cal.Rptr.2d 787 (citing *Symonds v. Mercury Savings & Loan Assn.,* 225 Cal.App.3d 1458, 1469, 275 Cal.Rptr. 871 (1990)).

The complaint fails to allege Litton's outrageous conduct to support an IIED claim. The complaint points to no conduct of Litton outside that generally accepted in loan servicing, debt collection and/or the foreclosure process, which is inherently stressful for debtors. The complaint identifies no severe emotional distress which Mr. Singh allegedly suffered. The IIED claim fails on its merits to warrant its dismissal.

### Injunctive Relief

The complaint's tenth claim seeks injunctive relief to prevent or rescind property foreclosure and eviction.

Litton faults an injunctive relief claim as "nothing more than a request for relief."

"Equity will not interpose its remedial power in the accomplishment of what seemingly would

be nothing but an idly and expensively futile act, nor will it purposely speculate in a field where there has been no proof as to what beneficial purpose may be subserved through its intervention." *Karlsen, v. American Sav. & Loan Assn.*, 15 Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971). "Injunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted." *Shell Oil Co. v. Richter*, 52 Cal.App.2d 164, 168, 125 P.2d 930 (1942).

The complaint lacks facts to support injunctive relief, especially given the absence of alleged facts to support Litton's wrongdoing, involvement in foreclosure or related irregularities. No viable claim supports injunctive relief to doom an injunctive relief claim. In other words, injunctive relief fails with the remanded claims.

### **Declaratory Relief**

The complaint's tenth claim also seeks a declaration that the trustee sale is "null, void, and improper."

Litton again faults a declaratory relief claim as "nothing more than a request for relief."

The complaint lacks a viable declaratory relief claim. The Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201, 2202, provides in pertinent part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. §2201(a).

The DJA's operation "is procedural only." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 463 (1937). "A declaratory judgment is not a theory of recovery." *Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd.*, 41 F.3d 764, 775 (1st Cir. 1994). The DJA "merely offers an *additional remedy* to litigants." *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 21 (2nd Cir. 1997) (italics in original). A DJA action requires a district court to "inquire whether there is a case of actual controversy within its jurisdiction." *American States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994).

Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the

uncertainty, insecurity, and controversy giving rise to the proceeding." *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir.1984).

As to a controversy to invoke declaratory relief, the question is whether there is a "substantial controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512 (1941). The United States Supreme Court has further explained:

> A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. . . . The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Haworth*, 300 U.S. at 240-241, 57 S.Ct. at 464 (citations omitted).

The failure of the remanded claims as a whole demonstrates the absence of an actual controversy subject to declaratory relief. A declaratory relief action "brings to the present a litigable controversy, which otherwise might only be tried in the future." *Societe de Conditionnement v. Hunter Eng. Co., Inc.*, 655 F.2d 938, 943 (9th Cir. 1981). In the absence of a viable claim, the complaint fails to support declaratory relief.

**Failure To Tender**

Lastly, Litton attacks the remanded claims globally based on the complaint's failure to allege Mr. Singh's tender of amounts owed on his loan or ability to do so.

"A tender is an offer of performance made with the intent to extinguish the obligation." *Arnolds Management Corp. v. Eischen*, 158 Cal.App.3d 575, 580, 205 Cal.Rptr. 15 (1984) (citing Cal. Civ. Code, § 1485; *Still v. Plaza Marina Commercial Corp.,* 21 Cal.App.3d 378, 385, 98 Cal.Rptr. 414 (1971)). "A tender must be one of full performance . . . and must be unconditional to be valid." *Arnolds Management*, 158 Cal.App.3d at 580, 205 Cal.Rptr. 15. "Nothing short of the full amount due the creditor is sufficient to constitute a valid tender, and the debtor must at his peril offer the full amount." *Rauer's Law etc. Co. v. S. Proctor Co.,* 40 Cal.App. 524, 525, 181 P. 71 (1919).

A defaulted borrower is "required to allege tender of the amount of [the lender's] secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure." *Abdallah*

*v. United Savings Bank*, 43 Cal.App.4th 1101, 1109, 51 Cal.Rptr.2d 286 (1996), *cert. denied*, 519 U.S. 1081, 117 S.Ct. 746 (1997). "A party may not without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of trust, or have his title quieted against the purchaser at such a sale, even though the statute of limitations has run against the indebtedness." *Sipe v. McKenna*, 88 Cal.App.2d 1001, 1006, 200 P.2d 61 (1948).

In *FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal.App.3d 1018, 1021, 255 Cal.Rptr. 157 (1989), the California Court of Appeal explained:

> . . . generally "an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security." . . . . This rule . . . is based upon the equitable maxim that a court of equity will not order a useless act performed. . . . "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." . . . The rationale behind the rule is that if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs. (Citations omitted.)

An action to set aside a foreclosure sale, unaccompanied by an offer to redeem, does not state a cause of action which a court of equity recognizes. *Karlsen v. American Sav. & Loan Assn.*, 15 Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971). The basic rule is that an offer of performance is of no effect if the person making it is not able to perform. *Karlsen*, 15 Cal.App.3d at 118, 92 Cal.Rptr. 851 (citing Cal. Civ. Code, § 1495). Simply put, if the offeror "is without the money necessary to make the offer good and knows it" the tender is without legal force or effect. *Karlsen*, 15 Cal.App.3d at 118, 92 Cal.Rptr. 851 (citing several cases). "It would be futile to set aside a foreclosure sale on the technical ground that notice was improper, if the party making the challenge did not first make full tender and thereby establish his ability to purchase the property." *United States Cold Storage v. Great Western Savings & Loan Assn.,* 165 Cal.App.3d 1214, 1224, 212 Cal.Rptr. 232 (1985). "A cause of action 'implicitly integrated' with the irregular sale fails unless the trustor can allege and establish a valid tender." *Arnolds Management*, 158 Cal.App.3d at 579, 205 Cal.Rptr. 15.

"It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." *Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934); *see Mix v. Sodd*, 126 Cal.App.3d 386, 390, 178 Cal.Rptr. 736 (1981) ("a mortgagor in possession may not maintain an action to quiet title, even though the debt is unenforceable"); *Aguilar v. Bocci*, 39 Cal.App.3d 475,

477, 114 Cal.Rptr. 91 (1974) (trustor is unable to quiet title "without discharging his debt").

Moreover, to obtain "rescission or cancellation, the rule is that the complainant is required to do equity, as a condition to his obtaining relief, by restoring to the defendant everything of value which the plaintiff has received in the transaction. . . . The rule applies although the plaintiff was induced to enter into the contract by the fraudulent representations of the defendant." *Fleming v. Kagan*, 189 Cal.App.2d 791, 796, 11 Cal.Rptr. 737 (1961). "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." *Karlsen,* 15 Cal.App.3d at 117, 92 Cal.Rptr. 851. Analyzing "trust deed nonjudicial foreclosure sales issues in the context of common law contract principles" is "unhelpful" given "the comprehensive statutory scheme regulating nonjudicial foreclosure sales." *Residential Capital v. Cal-Western Reconveyance Corp.*, 108 Cal.App.4th 807, 820, 821, 134 Cal.Rptr.2d 162 (2003).

"The rules which govern tenders are strict and are strictly applied." *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 439, 129 Cal.Rptr.2d 436 (2003). "The tenderer must do and offer everything that is necessary on his part to complete the transaction, and must fairly make known his purpose without ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction." *Gaffney v. Downey Savings & Loan Assn.,* 200 Cal.App.3d 1154, 1165, 246 Cal.Rptr. 421 (1988). The debtor bears "responsibility to make an unambiguous tender of the entire amount due or else suffer the consequence that the tender is of no effect." *Gaffney*, 200 Cal.App.3d at 1165, 246 Cal.Rptr. 421.

The absence of allegations of Mr. Singh's tender or ability to tender dooms the remanded claims and a challenge to foreclosure sale. The record reveals nothing to support Mr. Singh's meaningful ability to tender.

**Attempt At Amendment And Malice**

Since the remanded claims are barred as a matter of law, Mr. Singh is unable to cure the remanded claims by allegation of other facts and thus is not granted an attempt to amend.

Moreover, this Court surmises that Mr. Singh has brought this action in absence of good faith and that Mr. Singh seeks to exploit the court system solely for delay or to vex Litton. The test for maliciousness is a subjective one and requires the court to "determine the . . . good faith of the

applicant." *Kinney v. Plymouth Rock Squab Co.*, 236 U.S. 43, 46 (1915); *see Wright v. Newsome*, 795 F.2d 964, 968, n. 1 (11th Cir. 1986); *cf. Glick v. Gutbrod*, 782 F.2d 754, 757 (7th Cir. 1986) (court has inherent power to dismiss case demonstrating "clear pattern of abuse of judicial process"). A lack of good faith or malice also can be inferred from a complaint containing untrue material allegations of fact or false statements made with intent to deceive the court. *See Horsey v. Asher*, 741 F.2d 209, 212 (8th Cir. 1984). An attempt to vex or delay provides further grounds to dismiss the remanded claims.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court DISMISSES with prejudice the remanded claims, that is, the complaint's first, second, third, sixth, seventh and tenth claims addressed above.

IT IS SO ORDERED.

**Dated:** April 28, 2011              /s/ Lawrence J. O'Neill
                                       UNITED STATES DISTRICT JUDGE